UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARRETT W.,[1]

                     Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

DECISION & ORDER

19-CV-1091MWP

**PRELIMINARY STATEMENT**

        Plaintiff Garrett W. brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits and Supplemental Security Income Benefits ("DIB/SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 11).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 7, 9). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2015, the alleged onset date. (Tr. 13-25).[2] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar disorder; asthma; depression; and alcohol abuse. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*).

The ALJ concluded that plaintiff retained the RFC to perform light work with certain limitations. (*Id.*). Specifically, the ALJ found that plaintiff could occasionally balance, stoop, crouch, kneel, crawl, reach in all directions, including overhead, with his right arm, and be exposed to pulmonary irritants and workplace hazards, but could not climb ladders, ropes, or scaffolds. (*Id.*). Additionally, the ALJ determined that plaintiff was limited to simple, routine, and repetitive tasks and must be permitted to alternate between walking or standing and sitting every forty-five minutes while remaining on task at his workstation. (*Id.*). At step four, the ALJ determined that plaintiff was unable to perform his past work. (*Id.*). At step five, the ALJ

---

[2] The administrative transcript (Docket # 4) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

determined that based on plaintiff's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that plaintiff could perform, such as toll collector and storage facility rental clerk. (*Id.*). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

### III. Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he was not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 7-1). Plaintiff challenges the ALJ's RFC determination on the grounds that the ALJ erred by failing to consider two medical opinions authored by independent medical examiners James W. Faulk ("Faulk"), MD, and Donald Paarlberg ("Paarlberg"), MD, contained in the record and that such error resulted in an RFC that overlooked his limitations in bending and twisting. (*Id.*). The Commissioner responds that the RFC adequately accounted for plaintiff's bending and twisting limitations and that, in any event, any error was harmless because the positions identified by the vocational expert did not require bending or twisting. (Docket # 9-1 at 20-21).

### IV. Analysis

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009)

(citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

      Plaintiff argues that the ALJ improperly failed to consider Faulk's and Paarlberg's opinions and thus failed to weigh them or explain the basis for rejecting the limitations that they assessed. (Docket # 7-1 at 18-20). Because an ALJ is required to consider all medical opinions of record, including opinions authored by independent medical examiners, plaintiff continues, the ALJ's failure to consider Faulk's and Paarlberg's opinions necessitates remand. (*Id.*). I agree.

      An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)[3]). In evaluating medical opinions, regardless of their source, the ALJ should consider the following factors:

(1)     the frequency of examination and length, nature, and extent of the treatment relationship;

(2)     the evidence in support of the physician's opinion;

(3)     the consistency of the opinion with the record as a whole;

(4)     whether the opinion is from a specialist; and

(5)     whatever other factors tend to support or contradict the opinion.

---

[3] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see Spielberg v. Barnhart*, 367 F. Supp. 2d at 281 ("factors are also to be considered with regard to non-treating sources, state agency consultants, and medical experts") (citing 20 C.F.R. § 404.1527(f), *redesignated* § 404.1527(e)); *House v. Astrue*, 2013 WL 422058, *3 (N.D.N.Y. 2013) ("[m]edical opinions, regardless of the source are evaluated considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c)").

Paarlberg, who evaluated plaintiff on May 27, 2014 – prior to the relevant time period[4] – concluded that plaintiff suffered from a moderate partial disability. (Tr. 1501-505, 1892-94). Paarlberg assessed that plaintiff was unable to lift more than twenty pounds with his right arm, stand or sit in one position for more than an hour, or engage in repeated bending or twisting. (*Id.*).

State consulting examiner Michael Rosenberg ("Rosenberg"), MD, examined plaintiff on March 30, 2016. (Tr. 383-86). He concluded that plaintiff did not have any physical limitations. (*Id.*).

Independent medical examiner Robert Bauer ("Bauer"), MD, examined plaintiff on April 25, 2016 and July 25, 2016. (Tr. 713-19, 776-78). Bauer concluded that plaintiff was limited to sedentary work. (*Id.*). According to Bauer, plaintiff was capable of frequently sitting, standing, walking, and climbing, and occasionally lifting up to ten pounds, kneeling, and reaching in all directions. (*Id.*). Bauer opined that plaintiff was unable to bend, stoop, or squat. (*Id.*).

---

[4] The record suggests that Paarlberg examined plaintiff and authored an opinion in May 2014. (Tr. 818). He supplemented his report on October 24, 2014, and testified regarding his conclusions during a telephonic deposition conducted in connection with plaintiff's worker's compensation claim on November 17, 2014. (Tr. 818, 1501-505).

Faulk conducted an independent examination of plaintiff on May 12, 2016. (Tr. 1338-44). He concluded that plaintiff was able to engage in light work involving limited thoracic rotation and no lifting in excess of twenty-five pounds.[5] (*Id.*).

In his decision, the ALJ reviewed plaintiff's medical records, his testimony, and the opinions authored Bauer and Rosenberg, to which the ALJ gave "partial weight." (Tr. 15-23). Based upon this evidence, the ALJ concluded that plaintiff was able to engage in the physical requirements of light work, provided he was only required to occasionally balance, stoop, crouch, kneel, crawl, and reach in all directions and was permitted to alternate between sitting and standing. (*Id.*). In reaching this conclusion, the ALJ did not discuss or mention the Faulk and Paarlberg opinions. Thus, the decision does not reflect whether he considered and rejected those opinions and, if so, the basis for any such rejection, or whether he overlooked the opinions entirely.

As a general matter, plaintiff is entitled to consideration by the ALJ of Faulk's and Paarlberg's opinions and explanation of any rejection of the limitations assessed in those opinions. *See* 20 C.F.R. § 404.1527(c) ("[r]egardless of its source, [the Commissioner] will evaluate every medical opinion [it] receive[s]"); *Acly-Blakeslee v. Comm'r of Soc. Sec.*, 2019 WL 7048713, *2 (W.D.N.Y. 2019) ("[i]n assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record[;] . . . [t]he failure to do so is an error warranting remand"); *Jackson v. Colvin*, 2016 WL 1578748, *4 (W.D.N.Y. 2016) ("because there was no treating physician's opinion detailing plaintiff's mental limitations, the ALJ was required to discuss and weigh the opinions of the consulting state agency psychologists in reaching a mental

---

[5] The record contains other opinions assessing plaintiff's physical functional limitations, including those authored by plaintiff's treating pain management specialist, Brooke Kelly, MD, and independent medical examiner Sunial C. Ninan, DC, who examined plaintiff in 2010. (Tr. 1319-21, 1652-57). The parties do not raise any specific arguments regarding these opinions.

RFC finding"); *Hall v. Colvin*, 37 F. Supp. 3d 614, 627 (W.D.N.Y. 2014) ("[t]he ALJ . . . did not assign weight to *any other physician* who provided an opinion for the medical record[;] [t]his is a reversible error"); *Hill v. Astrue*, 2013 WL 5472036, *12 (W.D.N.Y. 2013) ("with regard to [the] consultative psychologist . . . , the ALJ failed to discuss his opinion or explain the weight, if any, accorded to it[;] [t]his is further error requiring remand").  Thus, the ALJ's failure to consider the opinions of Faulk and Paarlberg[6] and explain the weight to be assigned to them constitutes an error that, unless harmless, requires remand.

        The government contends that the ALJ's failure to explicitly weigh these opinions was harmless for two independent reasons: first, that the ALJ accounted in the RFC for the bending and twisting limitations assessed by Faulk and Paarlberg by limiting plaintiff to occasional postural activities; and second, that the jobs identified by the vocational expert at step five did not require bending and twisting.  (Docket # 9-1 at 20-21).  Review of the decision and relevant records does not permit me to find that the ALJ's failure to consider Faulk's and Paarlberg's opinions was harmless.

        Although the failure to explicitly assign weight to an opinion may be harmless in some scenarios, such as where the ALJ's decision reflects that the opinion was considered or where the limitations assessed in the opinion were ultimately accounted for in the RFC, *see Hamilton v. Astrue*, 2013 WL 5474210, *16 (W.D.N.Y. 2013) ("[a]lthough the ALJ did not explicitly assign a weight to [the medical opinion], the ALJ provided a summary of [the opinion] . . . in his decision[;] [i]n any event, the [opinion] is consistent with . . . and supports [the ALJ's] RFC determination; any error is thus harmless"), those circumstances are not present here.  The

---

[6] That Paarlberg's opinion predated the relevant period by two months does not alone justify disregarding the opinion in its entirety.  *See Pugh v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 305, 315 (W.D.N.Y. 2018) ("[a] medical opinion need not be rejected or ignored solely because it predates the relevant time period").

9

ALJ's opinion does not even mention either Faulk's or Paarlberg's opinion, nor does it demonstrate that the limitations assessed by these physicians were accounted for in the RFC. Plaintiff draws particular attention to his bending and twisting limitations, which he maintains are not incorporated into the RFC.

Limitations in bending "do not, as a matter of law, significantly diminish the range of light work available to a claimant" – meaning that a failure to account for them in the RFC generally will be considered harmless. *Cherry v. Comm'r of Soc. Sec.*, 2019 WL 1305961, *11 (S.D.N.Y. 2019) ("[l]imitations on bending and stooping do not, as a matter of law, significantly diminish the range of light work available to a claimant"), *aff'd*, 813 F. App'x 658, 662 (2d Cir. 2020) (summary order) ("if a person can stoop occasionally . . . in order to lift objects, the sedentary and light occupational base is virtually intact") (quoting SSR 85-15, 1985 WL 56857, *7 (S.S.A. 1985)); *Phillips v. Comm'r of Soc. Sec.*, 2018 WL 1768273, *4 (N.D.N.Y. 2018) ("[b]ecause the occupations [identified at step five] do not require bending or climbing, any error in failing to include a limitation in the RFC was harmless"); *Dier v. Colvin*, 2014 WL 2931400, *4 (W.D.N.Y. 2014) (moderate limitation in bending "does not erode the occupational base for light work"); *see Anysha M. v. Comm'r of Soc. Sec.*, 2020 WL 1955326, *11 (N.D.N.Y. 2020) (ALJ accounted in RFC for moderate limitation for bending by limiting plaintiff to position requiring no crouching and only occasional stooping). Indeed, the positions identified by the vocational expert in this matter required no crouching or crawling and, at most, occasional stooping and kneeling. *See* DOT 295.367-026, 1991 WL 672594 (1991); DOT 211.462-038, 1991 WL 671847 (1991).

Any harmless error analysis in this case, however, is complicated by the fact that the ALJ well may have overlooked Faulk's and Paarlberg's opinions altogether. In his

determination, the ALJ explicitly evaluated and weighed only the opinions of Rosenberg and Bauer – two opinions that were drastically at odds with one another.  As noted above, Rosenberg assessed that plaintiff did not have any physical limitations, while Bauer assessed that he was limited to sedentary work involving "no bending, stooping, or squatting."  (Tr. 382-86, 713-19, 776-77).  The ALJ gave both of these opinions partial weight, concluding that plaintiff was capable of light work with occasional postural limitations and a sit/stand option.

It is possible that consideration of the opinions authored by Paarlberg, who also assessed bending limitations, and Faulk may have altered the relative weights that the ALJ gave the opinions of Bauer and Rosenberg, potentially altering the outcome of this case.  For instance, had the ALJ given greater weight to Bauer's opinion and credited his assessment that plaintiff was unable to engage in *any* bending, stooping, or squatting, such determination would have altered the ALJ's RFC assessment and may have affected his step five conclusion that there were other jobs in the economy that plaintiff could perform.  *See Palmer v. Berryhill*, 2018 WL 6304349, *5 (D. Conn. 2018) ("a *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply") (quoting SSR 96-9p, 1996 WL 374185, *7-8 (S.S.A. 1996)).  Indeed, one of the positions identified by the vocational expert required occasional stooping.  *See* DOT 295.367-026, 1991 WL 672594 (1991).[7]  Of course, because the ALJ said nothing about either Faulk's or Paarlberg's opinion, his decision makes it impossible to determine whether the ALJ considered them at all and whether consideration of the opinions would have altered the weight given to Rosenberg's and Bauer's opinions.  *See Reider v. Colvin*, 2016 WL 5334436, *5 n.3

---

[7] The vocational expert opined that plaintiff could also perform the position of toll collector and testified that approximately 16,000 toll collection positions exist nationally.  (Tr. 24).  Of course, a recent conversion to a cashless toll system has resulted in the elimination of toll collection positions throughout New York State Thruway system.  *See* https://www.thruway.ny.gov/cashless/faqs.html (last visited March 4, 2021).

(W.D.N.Y. 2016) ("it is impossible to determine whether the ALJ reached this conclusion despite [the consultant's opinion] or whether he overlooked the [consultant's] opinion, and thus may have reached a different conclusion had he considered it"); *Hall v. Astrue*, 2014 WL 4924009, *10 (W.D.N.Y. 2014) (failure to consider medical evidence not harmless; "consideration of [medical evidence] could have affected not only the ALJ's credibility assessment, but also his assessment of the proper weight to be afforded to the medical opinions of record").

In addition, disregard of Faulk's and Paarlberg's opinions may have caused the ALJ to overlook altogether the limitations for twisting that they both assessed – a failure that is not necessarily harmless. Unlike the bending limitation, which was also identified by Bauer, the twisting limitations were only assessed by Faulk and Paarlberg – significantly increasing the possibility that the ALJ completely overlooked this limitation. Further, unlike postural limitations associated with bending, such as stooping and crouching, which are explicitly accounted for in the specifications listed in the Dictionary of Occupational Titles (the "DOT"), the DOT does not specify the twisting requirements of occupational positions. *See Patino v. Berryhill*, 2017 WL 3184468, *6 (C.D. Cal. 2017) ("because the [DOT] does not specify whether the job identified by the [vocational expert] involves any twisting, it is not clear whether the ALJ's error was harmless"). In other words, in this case, it is entirely unclear whether the ALJ considered the assessed twisting limitations and whether, had the ALJ credited the limitations, the positions identified at step five could be performed by someone with those limitations. Accordingly, I am unable to conclude that the ALJ's failure to evaluate the opinions of Faulk and Paarlberg was harmless. *See id.*

**CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 7)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                       *s/Marian W. Payson*
                                                       MARIAN W. PAYSON
                                                   United States Magistrate Judge

Dated: Rochester, New York
         March 4, 2021